UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| DEBRA FRIZZELL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION NO. |
| VS. | ) | |
| | ) | 3:06-CV-0313-G |
| RAYTHEON GROUP LIFE | ) | |
| INSURANCE PLAN, | ) | **ECF** |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Before the court is the motion by the defendant Raytheon Group Life

Insurance Plan ("Raytheon" or "the defendant") for summary judgment.  For the

reasons stated herein, the motion is denied.

## I.  BACKGROUND

This dispute under the Employee Retirement Income Security Act ("ERISA")

arises from Raytheon's denial of a claim for benefits filed by the plaintiff Debra

Frizell ("Frizzell" or "the plaintiff") following the death of her ex-husband.  Frizzell,

through her employer Raytheon, was offered the opportunity to purchase optional

dependent life insurance; she chose to purchase optional coverage on the life of her

then husband David Frizzell ("Mr. Frizzell").  *See* Plaintiff's Original Petition

("Petition") ¶ 5, *attached to* Notice of Removal.  The enrollment date for Mr. Frizzell

was on or about January 1, 2002.  *See* Affidavit of Debra Frizell ("Frizell Affidavit")

¶ 2, *attached to* Brief in Support of Plaintiff's Response to Defendant's Motion for

Summary Judgment ("Response") *as* Exhibit 1.

The summary plan description ("SPD") for the plan reads as follows with

respect to eligibility for enrollment:  "***Eligible Dependents***[.]  When you elect life

insurance for yourself, you can also enroll you eligible dependents for life insurance.

Your *eligible dependents* include your:  Legal spouse/same-sex domestic partner . . .".

Appendix in Support of Defendant's Brief in Support of Motion for Summary

Judgment ("Appendix") at 32 (emphasis in original).  The SPD expressly lists only

one instance in which optional dependent life insurance coverage will be cancelled --

if the employment of the plan participant is terminated.  *Id.* at 74.  The only

disqualifying event stated in the SPD regarding optional dependent life insurance is if

the dependent's death is occasioned by suicide.  *Id.* at 72.  Unlike the SPD, the

certificate of insurance states that coverage on an optional dependent life insurance

policy ends on "the date that the Dependent ceases to be your Dependent."  *Id.* at

137.

Mr. Frizzell died on June 6, 2004.  Petition ¶ 5.  Prior to his death, he and the

plaintiff were divorced.  *Id.* ¶ 7.  It is undisputed that the plaintiff paid her premiums

- 2 -

in full on the optional dependent life insurance policy from the date of enrollment through the date of Mr. Frizzell's death.  Frizzell Affidavit ¶ 2.  After the death of Mr. Frizzell, the plaintiff filed a claim on the policy with the plan administrator, Metropolitan Life Insurance Company ("MetLife"); that claim was denied based on the fact that Mr. Frizzell was not the "legal spouse" of the plaintiff at the time of his death.  Petition ¶¶ 5, 7.  Frizzell appealed the initial denial, and MetLife affirmed its earlier decision.

While both parties are in agreement on nearly all of the underlying facts, there is at least one substantial area of disagreement.  Raytheon claims that Frizzell, prior to the death of Mr. Frizzell but after their divorce, called the plan administrator to inform the administrator of the divorce; the defendant further alleges that Frizzell retracted her statement after being informed that the optional life insurance coverage would be cancelled because Mr. Frizzell was no longer her legal spouse.  *See* Motion for Summary Judgment at 11-12.  Frizzell denies that she was ever informed that her divorce from Mr. Frizzell would result in cancellation of the optional dependent life insurance policy.  Frizzell Affidavit ¶ 4.

Frizzell filed this case in the 162nd Judicial District Court, Dallas County, Texas; the petition asserted a solitary claim -- state law breach of contract.  The case was timely removed to this court based on the basis of complete ERISA preemption.  This motion for summary judgment followed.

## II. ANALYSIS

### A. ERISA Preemption

As a threshold matter, the court first must determine whether ERISA preempts the state law breach of contract claim asserted against Raytheon and, if so, whether the ERISA preemption can displace that state law cause of action.  Though the parties are in agreement that ERISA should govern the cause of action, the court must engage in the preemption examination because the preemption issue directly implicates this court's subject matter jurisdiction.

In determining whether a claim arises under federal law, the well-pleaded complaint rule allows a plaintiff to be the "master to decide what law [s]he will rely upon" in pursuing her claims.  *The Fair v. Kohler Die & Specialty Company*, 228 U.S. 22, 25 (1913); see also *Beneficial National Bank v. Anderson*, 539 U.S. 1, 6-7 (2003); *Aaron*, 876 F.2d at 1160-61.  Where potential remedies exist under both state and federal law, a plaintiff may choose to proceed only under state law and avoid federal court jurisdiction.  *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987); *Carpenter v. Wichita Falls Independent School District*, 44 F.3d 362, 366 (5th Cir. 1995).  "There is an exception to the well-pleaded complaint rule, though, if Congress 'so completely pre-empt[s] a particular area that any civil complaint raising this select group of claims is necessarily federal in character.'"  *Arana v. Ochsner Health Plan*, 338 F.3d 433, 437 (5th Cir. 2003) (en banc) (quoting *Metropolitan Life Insurance Company v.*

- 4 -

*Taylor*, 481 U.S. 58, 63-64 (1987)), *cert. denied*, 540 U.S. 1104 (2004).  Because

Frizzell's suit asserts a claim arising only under state law, this court does not have

federal question jurisdiction unless federal law completely preempts the state law

claim.

The Supreme Court has held that state-law claims seeking relief within the

scope of ERISA § 502(a)(1)(B) must be recharacterized as arising under federal law,

and as such, are removable to federal court.  *Metropolitan Life*, 481 U.S. at 60, 67; see

also *Ramirez v. Inter-Continental Hotels*, 890 F.2d 760, 762 (5th Cir. 1989).  According

to § 502(a)(1)(B), ERISA's civil enforcement provision:

> **§ 1132.  Civil enforcement**
>
> **(a)  Persons empowered to bring a civil action**
>
> A civil action may be brought --
>
> > **(1)** by a participant or beneficiary --
> >
> > * * *
> >
> > > **(B)** to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan . . . .

29 U.S.C. § 1132(a)(1)(B).  When a claimant seeks relief "within the scope of

[ERISA's] civil enforcement provisions," her claim is subject to *complete preemption*.

*Metropolitan Life*, 481 U.S. at 66.  Complete preemption "'recharacterizes' preempted

state law claims as 'arising under' federal law for the purposes of . . . making removal

available to the defendant." *McClelland v. Gronwaldt*, 155 F.3d 507, 516 (5th Cir.

1998); see also *Johnson v. Baylor University*, 214 F.3d 630, 632 (5th Cir.), *cert. denied*,

531 U.S. 1012 (2000).  To determine whether removal was proper, therefore, the

court must examine the contours of Frizzell's state law claim as it relates to complete

preemption.

　　　The court has no doubt that the state law breach of contract claim is

completely preempted by ERISA right of action to collect under the policy terms.

The plan in question fits within the definition of an employee welfare benefit plan[1]

and the cause of action is undoubtedly to recover under that plan.[2]  Accordingly,

Frizzell's breach of contract claim can be recharacterized as a federal claim for

purposes of federal question jurisdiction and it is "transmogrified" into an ERISA

claim.  See *Copling v. Container Store, Inc.*, 174 F.3d 590, 595 (5th Cir. 1999).

---

[1]　　Under ERISA, an "employee welfare benefit plan" is any "plan . . . established or maintained by an employer . . . for the purpose of providing for its participants . . . through the purchase of insurance . . . benefits in the event of . . . death." 29 U.S.C. § 1002(1)(A).

[2]　　The damages sought by Frizzell are limited to recovery under the policy and attorneys' fees pursuant to ERISA.  Petition ¶¶ 9-11.

Because of complete preemption, the plaintiff's state law breach of contract claim is converted into an ERISA claim under 29 U.S.C. § 1132.

### B. Legal Standard for Summary Judgment

Summary judgment is proper when the pleadings and evidence before the court show that no genuine issue exists as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); see also *Celotex Corporation v. Catrett*, 477 U.S. 317, 323 (1986). The disposition of a case through summary judgment "reinforces the purpose of the Rules, to achieve the just, speedy, and inexpensive determination of actions, and, when appropriate, affords a merciful end to litigation that would otherwise be lengthy and expensive." *Fontenot v. Upjohn Company*, 780 F.2d 1190, 1197 (5th Cir.1986).

While all of the evidence must be viewed in a light most favorable to the nonmovant, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (citing *Adickes v. S.H. Kress & Company*, 398 U.S. 144, 158-59 (1970)), neither conclusory allegations nor unsubstantiated assertions will satisfy the nonmovant's summary judgment burden. *Calbillo v. Cavender Oldsmobile, Inc.*, 288 F.3d 721, 725 (5th Cir.2002) (citing *Little v. Liquid Air Corporation*, 37 F.3d 1069, 1075 (5th Cir.1994) (en banc)). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

The movant makes the necessary showing by informing the court of the basis of its motion and by identifying the portions of the record which reveal there are no genuine material fact issues. *Celotex*, 477 U.S. at 323. The pleadings, depositions, admissions, and affidavits, if any, must demonstrate that no genuine issue of material fact exists. FED. R. CIV. P. 56(c).

If the movant makes the required showing, the nonmovant must then direct the court's attention to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial. *Celotex*, 477 U.S. at 323-24. To carry this burden, the "opponent must do more than simply show . . . some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corporation*, 475 U.S. 574, 586 (1986). Instead, the nonmovant must show that the evidence is sufficient to support a resolution of the factual issue in her favor. *Anderson*, 477 U.S. at 249. When conflicting evidence is presented, the court is not permitted to make credibility determinations regarding the evidence. See *Lindsey v. Prive Corporation*, 987 F.2d 324, 327 (5th Cir.1993). The nonmovant cannot survive a motion for summary judgment, however, by merely resting on the allegations in her pleadings. *Isquith for and on behalf of Isquith v. Middle South Utilities, Inc.*, 847 F.2d 186, 199 (5th Cir.), *cert. denied*, 488 U.S. 926 (1988); see also *Celotex*, 477 U.S. at 324.

C.  <u>Standard for Review of a Denial of Benefits Under ERISA</u>

When, as is the case here, a plan governed by ERISA grants the plan administrator the discretion to interpret the plan and determine eligibility of benefits under the plan, *see* Appendix at 140, a court reviews that decision under an abuse of discretion standard.  See *High v. E-Systems Inc.*, 459 F.3d 573, 576 (5th Cir. 2006). "In the summary judgment context, to avoid reversal, the ERISA administrator's decision must be supported by substantial evidence in the administrative record." *Id.*

A court uses a two-step analysis in determining whether a plan administrator abused its discretion in construing plan terms.  *Rhorer v. Raytheon Engineers and Constructors, Inc.*, 181 F.3d 634, 639 (5th Cir.1999).  The court first determines the legally correct interpretation of the plan and whether the administrator's interpretation accords with the proper legal interpretation.  *Id.*  Factors to consider when determining the legally correct interpretation of the plan include:  "(1) whether the administrator has given the plan a uniform construction; (2) whether the interpretation is consistent with a fair reading of the plan; and (3) any unanticipated costs resulting from different interpretations of the plan."  *Id.* at 640 n. 7.  If the administrator's construction is legally sound, then no abuse of discretion occurred and the inquiry ends.  *Id.* at 639-40.  If, however, the court concludes that the administrator has not given the plan the legally correct interpretation, the court must

determine whether the administrator's interpretation constitutes an abuse of discretion.  *Id.* at 640.

Before embarking on an analysis of the legally correct interpretation of the plan, the court first must determine which plan documents control the inquiry.  In the case *sub judice*, Frizzell does not challenge the interpretation of the plan as set forth in the certificate of insurance, but rather challenges the interpretation of the plan as summarized in the SPD.  Under ERISA, plan participants are to receive an "accurate, comprehensive, easy to understand summary of the plan."  *Hansen v. Continental Insurance Company*, 940 F.2d 971, 980 (5th Cir. 1991).

> A summary plan description of any employee benefit plan
> shall be furnished to participants and beneficiaries . . .  The
> summary plan description shall . . . be written in a manner
> calculated to be understood by the average plan
> participant, and shall be sufficiently accurate and
> comprehensive to reasonably apprise such participants and
> beneficiaries of their rights and obligations under the plan.

29 U.S.C. § 1022(a).  The purpose of the SPD is to avoid disqualifying plan participants from receiving benefits under the plan when the conditions for such disqualification are stated in a misleading or incomprehensible manner.  See *Hansen*, 940 F.2d at 980.  Because Frizzell's claims stem from the terms of the plan as described in the SPD, the court will limit its analysis to the contents of the SPD.

1.  *The Legally Correct Interpretation of the SPD*

Raytheon argues that all three factors concerning the legal correctness of its interpretation weigh in its favor, *see* Motion for Summary Judgment at 10-12, while Frizzell denies that the "legally correct interpretation" portion of the ERISA analysis is applicable, *see* Response at 7 n.3.  In the alternative, Frizzell argues that if the court were to engage in an analysis to determine whether the administrator's interpretation was legally correct, the administrator's decision to deny benefits was not legally correct because the SPD contained no provision regarding the termination of benefits upon divorce.  Resolution of Frizzell's contention that the court should not engage in the "legally correct interpretation" prong of the abuse of discretion analysis is unnecessary.  Because the court finds, on the evidence before it, that MetLife's interpretation was not legally correct, the court necessarily must engage in the abuse of discretion inquiry.

The court finds that the first factor -- whether the administrator has given the SPD a uniform construction -- weighs in favor of neither party.  Raytheon asks the court to compare the language of the SPD to the language of the certificate of insurance to prove uniform construction, but for the reasons stated above, the court limits its review to the materials included in the SPD.  The plaintiff, on the other hand, claims that the SPD is not subject to a uniform construction because certain language in the SPD indicates that upon divorce notifying the administrator of the

divorce is optional.  Frizzell's reading of the SPD is overly broad.  The portion of the

SPD she identifies as evincing an inconsistent construction states:  "If you experience

a change in status (such as marriage, divorce, or the birth of a child), you may want to

update your *beneficiary* information."  Appendix at 71.  The SPD also states, "Having

up-to-date beneficiaries for your life insurance is important, especially if you've had a

life event change -- such as marriage, birth, or divorce."  *Id.* at 65.  The SPD's

instructions to the plan participants that they *may* want to change the *beneficiary* on a

life insurance policy following divorce is in no way an indication of an inconsistent

construction.  Moreover, the portion of the administrative record provided to the

court on this motion for summary judgment is devoid of any reference to the manner

in which MetLife has interpreted the SPD with respect to other claimants.

        The second factor -- whether the administrator's interpretation is consistent

with a fair reading of the SPD -- weighs in favor of Frizzell.  The SPD must be

interpreted as a whole.  See *Fallo v. Piccadilly Cafeterias, Inc.*, 141 F.3d 580, 583 (5th

Cir. 1998).  The administrator's interpretation of the SPD is consistent with a fair

reading of the SPD, so long as one limits the inquiry to the section regarding

eligibility for enrollment.  Neither party contests that a person cannot qualify as a

dependent spouse (and thus cannot be enrolled in the optional dependent life

insurance policy) unless that person is the legal spouse of the employee.  However,

the plan is silent as to any requirements following initial enrollment in the plan, and

- 12 -

there are several excerpts from the SPD that demonstrate this inconsistency.  First, and most importantly, is the section entitled "When Coverage Normally Ends," which states that "coverage . . . continues throughout . . . employment."  Appendix at 74.  Also, in the same section the SPD states "[c]overage for your spouse/same-sex domestic partner and eligible dependent children continues . . . for as long as you are an active employee."  *Id.*  Neither of these two provisions indicates that a change in marital status will terminate coverage.  While this language does not present an inconsistency between the SPD and the plan, it sufficiently demonstrates to the court that the language in the SPD concerning termination of dependent spouse coverage is at least ambiguous, and ambiguities must be resolved in favor of the insured.  See *Fallo*, 141 F.3d at 584.

The defendant cites *Scott v. Aetna Life Insurance Company*, No. 3:04-CV-0611, 2005 WL 3179883 at *3 (M.D. Pa. Nov. 29, 2005), and *Shields v. Continental Casualty Company*, 209 F. Supp. 2d 1167, 1171 (D. Kan. 2002), for the proposition that the eligibility requirements listed in the instant SPD are sufficient to put the plan participant on notice that coverage ends when the requirements for eligibility to enroll are no longer met.  Raytheon's reliance on these cases is misplaced, however, since both involve a critical factual distinction.  The summary plan descriptions involved in *Scott* and *Shields* both stated that coverage for dependents terminated on the date that the covered dependent was no longer a dependent.  See *Scott*, 2005 WL

3179883, at *3; *Shields*, 209 F. Supp. 2d at 1171.  Though the *plan* here contains similar language, *see* Appendix at 137 (stating in the *plan* that "Dependent Life Benefits will end on the earliest of:  1. the date that the Dependent ceases to be your dependent" . . .), the SPD is bereft of similar language.

Raytheon also seeks to invoke support from language included on the company's website to bolster its interpretation of the SPD.  Specifically, Raytheon directs the court to a portion of the website entitled "Divorce," which states that after divorce the employee "must make changes to some of your benefits and you may make changes to others."  Appendix at 34.  The page goes on, without distinguishing which items "must" be changed and which items "may" be changed, to list several benefits that the employee should review.  *Id.*  While there is a serious question about whether knowledge of the website or the information or directives thereon can be imputed to Frizzell,[3] this page only serves to reinforce the court's conclusion that the SPD is ambiguous.

The third factor to consider at the "legally correct interpretation" stage is whether a contrary interpretation would result in substantial unanticipated costs. While this factor conceivably could weigh in favor of Raytheon, there is no competent evidence before the court to make such a determination.  Raytheon, in its motion for summary judgment, states only that the "Plaintiff's interpretation would

---

[3]    Frizzell asserts that she was never directed to the website, by the SPD or otherwise, to determine limitations on her coverage.  Frizzell Affidavit ¶ 3.

be *more likely* to give rise to 'substantial unanticipated costs' . . .".  Motion for

Summary Judgment at 12 (emphasis added).  However, this is not the appropriate

standard.  It is not a question of whether Frizzell's interpretation is "more likely" to

result in unanticipated costs, but a question of whether such unanticipated costs

would be incurred by a contrary interpretation.  Because the court is without evidence

(or even argument) on the issue of substantial unanticipated costs, no ruling

regarding this factor can be made.  See *Haubold v. Intermedics, Inc.*, 11 F.3d 1333,

1340-41 (5th Cir. 1994).

Accordingly, this court cannot find, based on the evidence before it, that the

administrator's interpretation of the plan was the "legally correct" interpretation of

the plan.  Thus the court must move to the second prong of this two-part test.

## 2.  *Abuse of Discretion*

If the court determines that the administrator's interpretation deviated from

the legally correct interpretation, the court must then determine whether the

interpretation constituted an abuse of discretion.  *Rhorer*, 181 F.3d at 640.  The

factors to consider when determining if the administrator abused its discretion

include:  "(1) the internal consistency of the plan under the administrator's

interpretation, (2) any relevant regulations formulated by the appropriate

administrative agencies, and (3) the factual background of the determination and any

inferences of lack of good faith."  See *Wildbur v. ARCO Chemical Company*, 974 F.2d

631, 638 (5th Cir. 1992).  With regard to the application of the first factor, this court finds *Rhorer*, 181 F.3d 634, to be controlling.  In *Rhorer*, the plaintiff sought to recover benefits under an optional life insurance policy purchased by her husband through his work.  *Id.* at 637.  The administrator denied the plaintiff's claim because the deceased did not satisfy the "active work" requirement of the plan to be eligible for enrollment.  The plaintiff challenged this denial, arguing that the SPD was ambiguous because it did not state an active work requirement as an eligibility criterion for the optional life insurance policy.  *Id.* at 640.  After concluding that due to the ambiguity the administrator's interpretation was not the legally correct interpretation, the *Rhorer* court reviewed the decision under the abuse of discretion standard and held that the first factor was inapplicable because the interpretation at issue involved an interpretation of the SPD, not the plan.  *Id.* at 643.  To that extent, the instant case is indistinguishable from *Rhorer*, and thus the first factor here too is irrelevant.

The second factor requires the court to examine any relevant regulations formulated by the appropriate administrative agencies.  A review of these relevant regulations weighs in favor of Frizzell.  The contents of the SPD are federally regulated.  The SPD must contain "a statement clearly identifying circumstances which may result in disqualification, ineligibility, or denial, loss, forfeiture, suspension, offset, reduction, or recovery . . . of any benefits that a participant or

- 16 -

beneficiary might otherwise reasonably expect the plan to provide . . .".  29 C.F.R. § 2520.102-3(*l*); see also *Rhorer*, 181 F.3d at 643.  The court finds that the SPD at issue here does not satisfy these requirements.  On the evidence before the court, there is no portion of the SPD which indicates that the beneficiary may lose the right to the benefits provided under the plan upon divorce or upon a change making a person ineligible for enrollment after he was previously enrolled.

The third factor weighs in favor of the defendant to the extent that nothing in the factual background of this case indicates that the decision was arbitrary and capricious.  Similarly, there is no indicia of bad faith on the part of the administrator.  The plaintiff attempts to frame this factor in the same manner as it was framed in *Rhorer*.  There, the Court of Appeals found that the factual background was indicative of an arbitrary and capricious decision because the plaintiff, through her counsel, presented the "very specific contention" -- that the SPD was ambiguous and that ambiguities had to be resolved in favor of the plaintiff -- and the administrator denied the appeal by reciting only language in the plan.  *Rhorer*, 181 F.3d at 643.  Frizzell, in her response, avers that she, like the *Rhorer* plaintiff, presented this specific argument in her administrative appeal.  Response at 11.  However, in the portion of the record cited to support this averment, the language used by Frizzell's counsel is less than specific.  *See* Appendix at 27 ("I have reviewed the materials enclosed with said letter. Nowhere in said materials does it say that if you get a divorce that the insurance on

your spouse is no longer effective. . . .  [Frizzell] was never advised that divorce would alter this insurance.").  Nowhere is there any reference to the alleged ambiguity of the SPD.

Finding that the factors to determine abuse of discretion split evenly between the parties, the court, on this motion for summary judgment, cannot conclude that Raytheon is entitled to judgment as a matter of law.

III.  <u>CONCLUSION</u>

For the reasons stated herein, the defendant's motion for summary judgment is **DENIED**.

**SO ORDERED**.

February 16, 2007.

_____
A. JOE FISH
CHIEF JUDGE